**SLIP OP. 08-79**

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
|                                              | :
| TOYS "R" US, INC.,                           | :
|                                              | :
|                     Plaintiff,               | :
|                                              | :
|                  v.                          | :   Before: Jane A. Restani, Chief Judge
|                                              | :
| UNITED STATES,                               | :   Court No. 07-00115
|                                              | :
|                     Defendant,               | :
|                                              | :
|                  and                         | :
|                                              | :
| AMERICAN FURNITURE MANUFACTURERS             | :
| COMMITTEE FOR LEGAL TRADE,                   | :
|                                              | :
|                  and                         | :
|                                              | :
| VAUGHAN-BASSETT FURNITURE                    | :
| COMPANY, INC.                                | :
|                                              | :
|            Defendant-Intervenors.            | :
_____ :

## OPINION

[Commerce scope inquiry determination remanded.]

Dated:  July 16, 2008

Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP (Mark E. Pardo and Paul G. Figueroa) for the plaintiff.

Gregory G. Katsas, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Brian A. Mizoguchi); Nithya Nagarajan, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

King & Spalding, LLP (J. Michael Taylor, Stephen A. Jones, Joseph W. Dorn, and Tina M. Shaughnessy) for the defendant-intervenors.

Restani, Chief Judge:  This matter is before the court on plaintiff Toys "R" Us'

("TRU") motion for judgment upon the agency record pursuant to USCIT Rule 56.2.  Plaintiff,

an importer of certain toy boxes from the People's Republic of China ("PRC"), challenges the

United States Department of Commerce's ("Commerce") final scope ruling regarding an

antidumping duty order covering certain wooden bedroom furniture from the PRC.  (See Compl.

¶¶ 1–2); see also Wooden Bedroom Furniture from the People's Republic of China: Scope

Ruling on Toy Boxes, available at App. to Pl.'s Br. in Supp. of Rule 56.2 Mot. for J. Upon the

Agency R. ("Pl.'s App."), Tab 4 (Mar. 9, 2007) ("Final Scope Ruling").  For the reasons stated

below, the court remands to Commerce to determine a functional test and to conduct a scope

inquiry in accordance with 19 C.F.R. § 351.225(k)(2).

## BACKGROUND

On October 31, 2003, the American Furniture Manufacturers Committee for Legal Trade

filed a petition for the imposition of antidumping duties against wooden bedroom furniture from

the PRC.  See Petition for the Imposition of Antidumping Duties Against Wooden Bedroom

Furniture from China, available at Pl.'s App., Tab 1, at Ex. 5 (Oct. 31, 2003) ("Petition").  An

antidumping duty order was placed on certain wooden bedroom furniture from the PRC in

January 2005.  See Notice of Amended Final Determination of Sales at Less Than Fair Value

and Antidumping Duty Order: Wooden Bedroom Furniture From the People's Republic of

China, 70 Fed. Reg. 329, 329–30 (Jan. 4, 2005) ("WBF Order").  The scope of this order was

stated as follows:

> The product covered by the order is wooden bedroom furniture.  Wooden
> bedroom furniture is generally, but not exclusively, designed, manufactured, and
> offered for sale in coordinated groups, or bedrooms, in which all of the individual
> pieces are of approximately the same style and approximately the same material
> and/or finish.

Id. at 332.  Additionally, the subject merchandise included the following items:

> (1) Wooden beds such as loft beds, bunk beds, and other beds; (2) wooden
> headboards for beds (whether stand-alone or attached to side rails), wooden
> footboards for beds, wooden side rails for beds, and wooden canopies for beds;
> (3) night tables, night stands, dressers, commodes, bureaus, mule chests,
> gentlemen's chests, bachelor's chests, lingerie chests, wardrobes, vanities,
> chessers, chifforobes, and wardrobe-type cabinets; (4) dressers with framed glass
> mirrors that are attached to, incorporated in, sit on, or hang over the dresser;
> (5) chests-on-chests, highboys, lowboys, chests of drawers, chests, door chests,
> chiffoniers, hutches, and armoires; (6) desks, computer stands, filing cabinets,
> book cases, or writing tables that are attached to or incorporated in the subject
> merchandise; and (7) other bedroom furniture consistent with the above list.

Id. at 332 (footnotes omitted).  A "chest" was defined as being "typically a case piece taller than

it is wide featuring a series of drawers and with or without one or more doors for storing

clothing.  The piece can either include drawers or be designed as a large box incorporating a lid."

Id. at 332 n.5.  The WBF Order also contained a list of particular items that were excluded from

the scope of the order.[1]

---

[1] The following items were excluded:

> (1) Seats, chairs, benches, couches, sofas, sofa beds, stools, and
> other seating furniture; (2) mattresses, mattress supports (including
> box springs), infant cribs, water beds, and futon frames; (3) office
> furniture, such as desks, stand-up desks, computer cabinets, filing
> cabinets, credenzas, and bookcases; (4) dining room or kitchen
> furniture such as dining tables, chairs, servers, sideboards, buffets,
> corner cabinets, china cabinets, and china hutches; (5) other
> non-bedroom furniture, such as television cabinets, cocktail tables,
> end tables, occasional tables, wall systems, book cases, and
> entertainment systems; (6) bedroom furniture made primarily of
> wicker, cane, osier, bamboo or rattan; (7) side rails for beds made
> of metal if sold separately from the headboard and footboard;
> (8) bedroom furniture in which bentwood parts predominate;
> (9) jewelry armories; (10) cheval mirrors[;] (11) certain metal
> parts[;] (12) mirrors that do not attach to, incorporate in, sit on, or
> hang over a dresser if they are not designed and marketed to be
> sold in conjunction with a dresser as part of a dresser-mirror set.

(continued...)

On September 26, 2006, TRU filed a scope ruling request, asking that Commerce find

five toy boxes imported by TRU to be outside the scope of the WBF Order. Toys "R" Us Scope

Inquiry on Certain Toy Boxes—Wooden Bedroom Furniture from the People's Republic of

China, available at Pl.'s App., Tab 1 (Sept. 26, 2006). TRU argued that the clear language of the

WBF Order, as well as the descriptions included in the petition and the International Trade

Commission's ("ITC") final report, indicated that the toy boxes at issue are not wooden bedroom

furniture. Id. at 8. Specifically, TRU maintained that "toy boxes are not included in the scope

based on the language covering bedroom chests because toy boxes are very distinct products

used solely for the specific purposes of storing toys as well as entertaining and educating

children." Id.

On March 9, 2007, Commerce released its final scope ruling, finding that four of the five

boxes at issue were within the scope of the antidumping duty order. Final Scope Ruling at 9.

Pursuant to 19 C.F.R. § 351.225(k)(1), Commerce found the description of the merchandise

contained in the petition, the initial investigation, and the determinations of the Secretary of

Commerce (including prior scope determinations)[2] and the ITC to be dispositive of the matter.

Id. at 8–9. Commerce reiterated that "the WBF Order 'makes no reference requiring that boxes

---

[1](...continued)
Id. at 332–33 (footnotes omitted).

[2] In an unrelated scope determination made on November 14, 2005, Commerce found
that certain infant furniture, including infant armoires and toy boxes or chests, were within the
scope of the WBF Order pursuant to 19 C.F.R. § 351.225(k)(1). Final Scope Ruling and Formal
Scope Inquiry Initiation: Dorel Asia, available at Pl.'s App., Tab 1, at Ex. 1 (Nov. 14, 2005)
("Dorel Scope Ruling"). Commerce determined that the scope language "clearly states that
wooden bedroom 'chests' or 'box[es] incorporating a lid' are within the scope of the Order,
regardless of the proposed contents and design of the chests or boxes," and found that the Order
made "no reference requiring that boxes or chests be used for any particular or defined purpose."
Id. at 11–12.

or chests be used for any particular or defined purpose.  Nor does {it} provide exclusionary

language for toy boxes or chests or any other wooden bedroom furniture that may be fitted with

slow-closing safety hinges, special locking mechanisms, or air vents.'"  <u>Id.</u> at 8 (citing <u>Dorel</u>

<u>Scope Ruling</u> at 12).  Finding that four of the five toy boxes "are large boxes, incorporating a lid,

and are made substantially of wood," Commerce determined that "these toy boxes clearly meet

the description of the merchandise covered by the WBF Order."  <u>Id.</u> at 8–9.  Commerce therefore

found it unnecessary to consider the additional factors contained in 19 C.F.R. § 351.225(k)(2).

<u>Id.</u> at 9.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2).  Commerce's final scope

determination is upheld unless it is found "to be unsupported by substantial evidence on the

record, or otherwise not in accordance with law."  19 U.S.C. §1516a(b)(1)(B)(i).  "The court

gives significant deference to Commerce's interpretation of its own orders, but a scope

determination is not in accordance with the law if it changes the scope of an order or interprets

an order in a manner contrary to the order's terms."  <u>Allegheny Bradford Corp. v. United States</u>,

342 F. Supp. 2d 1172, 1183 (CIT 2004); <u>see also</u> <u>Duferco Steel, Inc. v. United States</u>, 296 F.3d

1087, 1096–97 (Fed. Cir. 2002).

### DISCUSSION

Pursuant to 19 C.F.R. § 351.225, "in considering whether a particular product is included

within the scope of an order or a suspended investigation, [Commerce] will take into account. . .

[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the

determinations of [Commerce] (including prior scope determinations) and the [ITC]."  19 C.F.R.

§ 351.225(k)(1).  Only "[w]hen the above criteria are not dispositive . . . will [Commerce]

further consider: (i) The physical characteristics of the product; (ii) The expectations of the

ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the

product is sold; and (v) The manner in which the product is advertised and displayed." 19

C.F.R. § 351.225(k)(2). In conducting a scope inquiry, "'the scope of a final order may be

clarified, [but] it can not be changed in a way contrary to its terms.'" Duferco Steel, Inc., 296

F.3d at 1097 (quoting Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed. Cir. 1990)).

TRU argues that the WBF Order "establishes two separate and distinct requirements for

subject merchandise: (1) all subject merchandise must be made substantially of wood and (2) all

subject merchandise must be 'bedroom furniture.'" (Br. in Supp. of Pl.'s Rule 56.2 Mot. for J.

Upon the Agency R. 13.) TRU contends that Commerce's reasoning unlawfully expands the

scope of the WBF Order to cover all wooden boxes with lids, even if they are not "bedroom"

furniture. (Id. at 19.) TRU maintains that instead, "[a] box or a chest can only be scope

merchandise if it is an item of bedroom furniture, which can only be determined by its design

and intended purpose." (Id. at 14.) TRU argues that the WBF Order describes a chest as "for

storing clothing," and therefore, because the toy boxes in question are for other purposes, they

plainly fall outside the scope of the order as constituting "non-bedroom furniture." (Id. at

14–15.)

TRU identifies the underlying petition and ITC investigation as further indications that

the scope of wooden bedroom furniture is defined by its use or purpose. The petition states that

"[a]ll types of wooden bedroom furniture are made of wood products, have physical

characteristics that are dictated by their intended use in a bedroom, and are typically used in a

bedroom." Petition at 20. The petition further notes that:

Because a bedroom is the room in which people sleep, it is also the room in which people dress and undress, and is, therefore, the room in which people store their clothes.  In terms of daily life, these functions are the essence of a bedroom – and have been, since time immemorial – and they are so linked as to be inseparable.

Id. at 18.

The ITC investigation also concluded that "wooden furniture [is] designed and manufactured for use in the bedroom.  It includes such items of wooden furniture as beds, nightstands, chests, armoires, and dressers with mirrors." Wooden Bedroom Furniture From China, USITC Pub. No. 3743, Investigation No. 731-TA-1058 (Final), at 6 (Dec. 2004).  The ITC determined that "all of the individual items of WBF share the same broad physical characteristics and end uses in that they are items of wooden furniture designed and manufactured for use in a bedroom." Id. at 7.

Commerce conversely argues that the plain language of the WBF Order clearly defines "chests" as bedroom furniture, contending that "bedroom" is defined by the listed subject and non-subject merchandise.  (Tr. of Oral Argument 21:8–13 (May 1, 2008).)  Commerce contends that the scope definition list of bedroom furniture is not an exhaustive list because it expressly includes the catch-all item of "other bedroom furniture consistent with the above list."  (Def.'s Mem. in Opp'n to Pl.'s Mot. for J. Upon the Agency R. 14.)  Commerce therefore maintains that because this catch-all follows the listing of "chests," the WBF Order clearly states that "'chests' – "like all other items included in the 'above list' of subject merchandise – are defined by the WBF Order's plain language to be 'bedroom furniture.'" (Id. at 14–15.)  Stated differently, Commerce argues that the subject merchandise meet the definition of "chests" because they are boxes with lids and do not fall within any of the specifically excluded items listed in the WBF

Order.[3]  Commerce also notes that the description of "chests" uses the word "typically" instead of "always."  (Id. at 16.)  Commerce contends that "to the extent that a chest is 'typically' a piece 'for storing clothing,' it is also plain from the text of the WBF Order's definition of a chest that such a piece can be 'a large box incorporating a lid.'"  (Id. at 17.)

     "[B]ecause the descriptions of subject merchandise contained in [Commerce's] determinations must be written in general terms," it is often difficult to determine "whether a particular product is included within the scope of an antidumping or countervailing duty order." 19 C.F.R. § 351.225(a); see also Duferco Steel, Inc., 296 F.3d at 1096.  Here, the plain language of the WBF Order does not define "bedroom furniture."  While both parties have presented arguments as to what the proper functional test for "bedroom furniture" is under the WBF Order, neither test is sufficient for a scope inquiry determination under 19 C.F.R. § 351.225(k)(1). Contrary to TRU's argument, the WBF Order does not require that chests must always be for "storing clothing" but rather states that they are only "typically" designed for doing so. Although the petition and ITC investigation "may provide valuable guidance as to the interpretation of the final order," and indicate that purpose or use help define the scope of wooden bedroom furniture, "they cannot substitute for language in the order itself."  Duferco Steel, Inc., 296 F.3d at 1097.  Further, purpose or use cannot be the test when conducting a § 351.225(k)(1) determination, as for this product, they are factors relevant only to a § 351.225(k)(2) inquiry, which Commerce did not do here.

     The WBF Order also cannot be read to encompass wooden chests as subject merchandise unless explicitly excluded.  There are items that are not bedroom furniture that are neither

_____

[3] Notably, Commerce conceded at oral argument that it was not aware of any other scope order that has been read in this manner.  (Tr. of Oral Argument 21:14–23.)

included nor excluded under the order, and it is not possible to consider every item that could

potentially be subject to the order.  Instead, when the criteria under § 351.225(k)(1) are not

dispositive for a scope inquiry, as is the case here, a determination pursuant to § 351.225(k)(2) is

warranted.  See Novosteel SA v. United States, 128 F. Supp. 2d 720, 723–24 n.5 (CIT 2001); see

also Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1382 (Fed. Cir. 2005) ("If the

determination can be made based on section (k)(1), a scope ruling will issue without a full

evaluation of the criteria in (k)(2).").

Consequently, the court concludes the WBF Order is ambiguous with respect to the

chests at issue.  A proper functional test has not been articulated that would make it possible to

determine whether the toy boxes at issue are within the scope of the WBF Order.  In addition to

articulating a test, it is necessary for Commerce to further address whether the subject

merchandise falls within the scope of the order using the factors enumerated in § 351.225(k)(2).

## CONCLUSION

The court hereby remands the matter to Commerce for further evaluation pursuant to the

procedures set forth in 19 C.F.R. § 351.225(k)(2).



                                            /s/ Jane A. Restani
                                            Jane A. Restani
                                            Chief Judge

Dated: This 16th day of July, 2008.
       New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____        By: _____
                                                Deputy Clerk